## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 12-80223-CV-HURLEY/HOPKINS

VIVIANA NOVOA,

     **Plaintiff,**

v.

GEICO INDEMNITY CO.,

     **Defendant.**

_____/

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Defendant's Motion for Summary Judgment [ECF No. 14]. The motion is fully briefed, and the Court heard the parties' oral arguments on December 11, 2012. The motion is thus ripe for adjudication. Upon review, the Court will grant the motion.

## I.  BACKGROUND[1]

This is a third-party bad-faith action arising out of an accident that occurred on the morning of Saturday, November 10, 2007 when Jose Ordonez, husband of Plaintiff Viviana Novoa,[2] stopped on his way to work to render aid to a stranded driver, Ethel Walker. While Ordonez was attempting to assist Walker, Christopher Meldon crashed into Ordonez, Ordonez's vehicle, and Walker's vehicle. Mr. Ordonez died as a result of the collision, and both the Ordonez and Walker vehicles

---

[1]To enhance readability, the Court will provide citations to the record in footnotes in this section of the Order.

[2]At times, the record refers to Novoa as "Ms. Ordonez." For simplicity's sake, the Court will refer to her as Novoa throughout this Order regardless of how she is identified in the underlying record evidence.

were damaged.

At the time of the accident, Defendant GEICO Indemnity Company ("GEICO") insured Meldon, providing $10,000 of coverage for bodily injury and $10,000 of coverage for property damage.  Because this action alleges that GEICO acted in bad faith toward its insured, Meldon, in handling Novoa's claims, the Court will set out the undisputed facts established in the record.

The accident was reported to GEICO at 5:05 p.m. on November 10, 2007, the day it occurred.[3]  Three days later,[4] on Tuesday, November 13, 2007, GEICO's Claims Examiner Lisa DePoy interviewed Meldon and discussed the facts of the accident.[5]  Two weeks later, on November 27, 2007, DePoy sent Novoa a letter with a check for $10,000, the policy limit for bodily injury.[6]  The letter further advised Novoa to discuss with her insurance carrier whether she had uninsured coverage available to her, asked her to provide GEICO with her insurance information so that GEICO could evaluate the property damage portion of her claim, and stated that "[Novoa's] personal insurance policy [would] cover the Death Benefit under the Personal Injury Protection coverage"[7]  The letter concluded by asking Novoa to contact GEICO to ask questions and to provide the

---

[3]DePoy Dep. 9 [ECF No. 26-1].

[4]The Sunday after the accident was Veterans Day, which was observed on the following Monday, November 12, 2007.

[5]Def.'s Am. Statement of Material Facts ("Def.'s Statement"), Ex. C [ECF No. 19-3].

[6]Def.'s Statement, Ex. G [ECF No. 19-7].

[7]*Id.*  DePoy incorrectly assumed that Novoa had personal insurance coverage.  DePoy Dep. 24 [ECF No. 26-1].  The record indicates that DePoy had some reason to suspect that Meldon's PIP coverage would apply to Novoa as early as December 21, 2007, but GEICO did not ultimately provide the $5,000 death benefit owing to Novoa until February 19, 2008.

2

information GEICO needed regarding her personal insurance coverage.[8]

Also included with the letter was a document entitled a "release of all claims."[9]  Although the letter stated that Novoa's property-damage and bodily-injury claims were being handled separately and implied that the release would only extinguish her bodily injury claims,[10] the release stated that it applied to *all* of Novoa's claims arising from the accident.  In subsequent depositions, GEICO stated that its intent was that the release would only extinguish Novoa's claims for bodily injury against GEICO and Meldon and that her property-damage claims would be resolved separately once GEICO had obtained the relevant information from Novoa and Walker, who were both asserting property-damage claims against the policy.[11]

Novoa neither cashed the check nor signed the release.  Instead, on December 12, 2007, she sent GEICO a letter demanding $3,100 under the property damage portion of the policy.[12]  The letter directed GEICO to contact her if it needed further information.  *Id.*  GEICO did not respond immediately to this demand letter, nor did it present the demand immediately to Meldon.[13]  On

---

[8]Def.'s Statement, Ex. G [ECF No. 19-7].

[9]Pl.'s Statement, Ex. D [ECF No. 23-4].

[10]Def.'s Statement, Ex. G [ECF No. 19-7] ("We need to obtain your insurance information, so that we may follow up on the damages to your vehicle and resolve those from our property damage limit of $10,000.00."); *see also* DePoy Dep. 25-26 [ECF No. 26-1].

[11]*See* DePoy Dep. 25-26 [ECF No. 26-1].

[12]Def.'s Statement, Ex. H [ECF No. 19-8].

[13]DePoy Dep. 47-48 [ECF No. 26-1].  (The Court clarifies that in this instance the citation above refers to the page number in the header of the document.  The page number at the bottom of the document is five, and it includes pages 179 to 182 of the transcription.)

January 11, 2008, thirty days after sending the demand letter, Novoa filed a complaint in Florida state court asserting a wrongful death count against Meldon and GEICO and a count for PIP Death Benefits against GEICO.[14]  GEICO received the complaint on February 5, 2008.[15]  On February 19, 2008, Novoa's attorney and GEICO agreed that the $5,000 death benefit was available under Meldon's PIP coverage because Novoa had no personal insurance of her own.[16]  GEICO and Novoa settled that claim shortly thereafter.

On January 28, 2008, before it received a copy of the state-court complaint, GEICO sent Novoa a letter offering $1,425.29 for her property damage claim.[17]  The letter explained that because Walker's claim under the property damage policy was for $18,650 and Novoa's was for $3,100, the prorated amount for Novoa's claim under the $10,000 policy was $1,425.29.[18]  The letter also included a property damage release.[19]  On the same date, GEICO sent a letter to Meldon advising that the property damage claims arising from the accident exceeded his $10,000 policy limits, that Meldon would be liable for the excess, and that GEICO would attempt to settle the property damage claim within the policy limits.[20]  GEICO also enclosed the letters it had sent to Walker's insurance

---

[14]Def.'s Statement, Ex. J [ECF No. 19-10].

[15]Def.'s Statement, Ex. D, at GLC 1406 [ECF No. 15-4].

[16]Def.'s Statement, Ex. K [ECF No. 19-11].

[17]Def.'s Statement, Ex. L [ECF No. 19-12].

[18]*Id.*

[19]*Id.*

[20]Def.'s Statement, Ex. M [ECF No. 19-13].

company and Novoa offering to settle their claims within the $10,000 policy limit.[21]

On February 7, 2008, Novoa rejected GEICO's offer of $10,000 for her claim and returned the check to GEICO.[22]  Novoa had previously decided on January 9, 2008 to hire an attorney and to file a lawsuit.[23]  Her attorney later testified that after January 9, it was unlikely that Novoa would accept an offer to settle the bodily injury claim within the $10,000 policy limits.[24]  Novoa subsequently explained that her decision to reject GEICO's offers was based in part upon her frustration with GEICO for not providing a Spanish-speaking adjuster and not paying her full property damage claim.[25]  Novoa stated that she would have settled the entirety of her claims against GEICO and Meldon if GEICO had offered  $13,100 ($10,000 for bodily injury and $3,100 for

---

[21]*Id.*

[22]Pl.'s Statement, Ex. O, at 2 [ECF No. 19-16].

[23]Overbeck Dep. 11-12 [ECF No. 29-1].

[24]Overbeck Dep. 8 [ECF No. 29-1].  Michael Overbeck, who represented Novoa in the underlying state-court action, made the following statement during a deposition:

> Q.     Was there ever a point in time after . . . you began your representation of Ms. Novoa . . . that you would have agreed to settle the wrongful death claim for a payment of $10,000 from the GEICO policy?
>
> [. . .]
>
> A.     It's difficult to give you an exact answer to that. I would say certainly by February 1st of 2008 the answer would be no. Before February 1st, 2008, based upon the information that I had, most likely not.

*Id.* at 11-12.

[25]*Id.*

property damage) rather than the $11,425.29 it offered.[26]  Novoa further stated that another reason

for not agreeing to settle was that GEICO had not responded quickly enough to her demand for

$3,100 for property damage.[27]

On April 3, 2008, GEICO sent a letter to Meldon recounting the following:

- GEICO's efforts to communicate with Novoa in the days following the accident;

- the $10,000 check and release sent regarding the bodily injury claim on November 27, 2007;

- that GEICO received receipts relating to Novoa's property damage claim on December 27, 2007 but, as of January 15, 2008, still needed to inspect the vehicle to evaluate that part of the claim;

- that GEICO requested Walker's property damage information on January 18, 2008 and received it on January 28, 2008 and sent a prorated offer to both parties on the same day;

- that Novoa rejected GEICO's bodily injury offer and returned the $10,000 check on February 7, 2008;

- that GEICO received Novoa's state-court complaint on February 5, 2008; and

- that GEICO would continue to attempt to resolve Novoa's claims and Meldon's own

---

[26]Novoa Dep. 12 [ECF No. 28-1].

[27]*Id.*

property damage.[28]

Novoa's lawsuit proceeded to trial and resulted in a final judgment for Novoa against Meldon in the amount of $16,591,426.07, plus interest.[29]   Novoa subsequently filed the instant bad-faith action against GEICO, seeking to recover the full amount of the Meldon judgment from GEICO.

## II.   JURISDICTION

The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because the parties are residents of different states and the claim places greater than $75,000 at issue.  Venue is proper in this district pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events giving rise to the claims occurred in Palm Beach County in the Southern District of Florida.

## III.   DISCUSSION

### A.   Standard on a Motion for Summary Judgment

Summary judgment is warranted if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Cattrett*, 477 U.S. 317, 322 (1986).  The moving party bears the burden of meeting this exacting standard.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  In determining whether summary judgment is appropriate, the facts and inferences from the record are viewed in the light most favorable to the non-moving party, and the burden is placed on the moving party to

---

[28]Pl.'s Statement, Ex. O [ECF No. 19-16].

[29]Complaint ¶ 17 [ECF No. 1].

establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a

matter of law. *See Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

When the non-moving party bears the burden of proof at trial, the moving party is not

required to "support its motion with affidavits or other similar materials negating the opponent's

claim" to demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

Instead, the moving party may "'show[]'—that is, point[] out to the district court—that there is an

absence of evidence to support the nonmoving party's case." *Id*. at 324.  If the moving party shows

the absence of a triable issue of fact, the burden shifts to the non-moving party to come forward with

evidence of each essential element of his claims, such that a reasonable jury could return a verdict

in his favor. *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002).  In response to a properly

supported motion for summary judgment, "an adverse party may not rest upon the mere allegations

or denials of the adverse party's pleading, but . . . must set forth specific facts showing that there is

a genuine issue for trial." Fed. R. Civ. P. 56(e).  The existence of a mere scintilla of evidence in

support of the non-movant's position is insufficient; there must be evidence on the basis of which

a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 252 (1986).

Although the question presented by this action—i.e., whether GEICO failed to act in good

faith toward its insured—is normally a fact question reserved for a jury, courts do grant summary

judgment in third-party bad-faith cases when the record demonstrates an absence of genuine issues

of material fact and no reasonable jury could find in the plaintiff's favor.  *See generally Shin Crest*

*PTE, Ltd. v. AIU Ins. Co.*, 368 F. App'x 14 (11th Cir. 2010) (unpublished) (affirming summary

judgment); *see also Boateng v. Geico Gen. Ins. Co.*, No. 10-CIV-60147, 2010 WL 4822601, at *5 (S.D. Fla. Nov. 22, 2010) (listing cases).

### B.   The Law of Bad Faith in Florida

Plaintiff's sole claim in this action is that GEICO breached its common-law duty of good faith to its insured, Meldon, in negotiating a potential settlement with Novoa.  In Florida, insurers must "refrain from acting solely on the basis of their own interests in settlement."  *State Farm Mut. Auto.  Ins. Co. v. Laforet*, 658 So. 2d 55, 58 (Fla. 1995) (internal quotation omitted).  The purpose of this rule to is to ensure that insurers, which routinely assume the obligation of defending the insured, do not handle cases in a way that minimizes the insurer's exposure at the expense of the insured.  *See* Roger C. Henderson, *The Tort of Bad Faith in First-Party Insurance Transactions: Refining the Standard of Culpability and Reformulating the Remedies by Statute*, 26 U. Mich. J.L. Reform 1, 21 (1992).

The leading case articulating what the standard of good faith requires states that an insurer must

> use the same degree of care and diligence as a person of ordinary care and prudence should exercise in the management of his own business . . . .  This good faith duty obligates the insurer to advise the insured of settlement opportunities, to advise as to the probable outcome of the litigation, to warn of the possibility of an excess judgment, and to advise the insured of any steps he might take to avoid same.  The insurer must investigate the facts, give fair consideration to a settlement offer that is not unreasonable under the facts, and settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so.

*Boston Old Colony Ins. Co. v. Gutierrez*, 386 So. 2d 783, 785 (Fla. 1980) (internal citations omitted).

Moreover, when "liability is clear[] and injuries [are] so serious that a judgment in excess of policy

9

limits is likely, an insurer has an affirmative duty to initiate settlement negotiations" even in the absence of a demand by the claimant. *Powell v. Prudential Prop. & Cas. Ins. Co.*, 584 So. 2d 12, 14 (Fla. 3d DCA 1991). Failure to exercise good faith toward its insured renders the insurer liable to "pay the entire judgment entered against the insured in favor of the injured third party, including any amount in excess of the insured's policy limits." *Laforet*, 658 So. 2d at 58.

Coextensive with this duty of good faith, however, is the acknowledgment that "[a]n insurer—acting with diligence and due regard for its insured—must be allowed a reasonable time to investigate a claim; no obligation exists to accept a settlement offer (or to tender policy limits in advance of a settlement offer) without time for investigation." *Johnson v. Geico Gen. Ins. Co.*, 318 F. App'x 847, 851 (11th Cir. 2009) (unpublished). In addition, courts have clarified that bad faith is a distinct standard to that of negligence. *Campbell v. Gov't Emp. Ins. Co.*, 306 So. 2d 525, 530-31 (Fla. 1974). Unlike ordinary negligence, "[t]he essence of an insurance bad faith claim is that the insurer acted in its own best interests, failed to properly and promptly defend the claim, and thereby exposed the insured to an excess judgment." *Maldonado v. First Liberty Ins. Corp.*, 546 F. Supp. 2d 1347, 1353 (S.D. Fla. 2008). Thus, insurers have a positive duty to handle claims in a way that protects the interests of their insured, but they are not required to handle them perfectly, nor must they act without having had sufficient time to process and investigate a claim.

Although GEICO owed the duty of good faith to Meldon (its insured) rather than Novoa (the claimant), Florida law allows third-party claimants in whose favor judgments against the insured have been entered to bring bad-faith claims directly against insurers. *Thompson v. Commercial Union Ins. Co. of N.Y.*, 250 So. 2d 259, 262 (Fla. 1971).

10

### *C.  Novoa's Bad-Faith Claim*

Novoa brings this action derivatively through Meldon, alleging that GEICO breached its duty of good faith by (a) failing to communicate with Novoa in Spanish, (b) providing a release that arguably would cover *all* of Novoa's claims alongside a check that only covered the bodily injury portion of the claim, (c) failing to notify Meldon of Novoa's letter seeking $3,100 for her property damage, (d) offering $1,425.29 to Novoa for her property damage without first consulting with Meldon or Walker (via her insurer), and (e) failing to resolve Novoa's entitlement to the $5,000 PIP death benefit quickly enough.  Response 7-8 [ECF No. 22].  For the purpose of evaluating these claims, the Court resolves all factual disputes in Plaintiff's favor.

The record establishes that GEICO acted quickly to evaluate the potential claims arising from the accident and, without having received a demand, offered Novoa the full amount of coverage available under the bodily-injury section of the policy only seventeen days after the accident occurred.  There is no evidence that GEICO attempted to delay or avoid communicating with Novoa. Accepting Novoa's statement that she struggles to communicate in English, the record demonstrates that GEICO's communication in English did not mislead or confuse Novoa, nor did it hinder negotiations with her.  To the contrary, the undisputed facts reveal that despite the communications in English, Novoa received GEICO's offer of $10,000 under the bodily injury portion of the policy, comprehended it, and determined that she wished to pursue an additional claim for $3,100 in property damage.  On December 12th, fifteen days after receiving GEICO's offer,  Novoa sent GEICO a letter in English requesting payment for her property claim.  Thirty days later, a period that included the holiday season and New Year's Day, Novoa retained counsel and instructed him to file

11

suit on her behalf.  Bearing in mind that an insurer is entitled to "a reasonable time to investigate a claim," *Johnson*, 318 F. App'x at 851, the record indicates that over the thirty-day span GEICO was diligently investigating Novoa's property-damage request and determining how much it could offer her in light of the fact that there were multiple claims against that part of the policy.  *See* Pl.'s Statement, Ex. D, at GLC 1407-08 [ECF No. 15-4] (indicating that after it received Novoa's demand on December 19, GEICO called Novoa multiple times to obtain her insurance information and was also attempting to determine the extent of the additional claims under the property-damage portion of the policy).  While Novoa states that she does not recall the phone calls indicated in GEICO's activity log during that time, *see* Novoa Dep. 8-9 [ECF No. 28-1], the activity log unquestionably demonstrates that GEICO was attempting to evaluate Novoa's property claim and sought to obtain further information from her, as directed by her letter.

Novoa contends that GEICO never consulted with Meldon about Novoa's request for $3,100 under the property damage policy or asked him if he would be willing to attempt to settle the claim by supplementing GEICO's offer with his own funds.  GEICO, however, had properly responded to Novoa's request by attempting to determine the amount it was prepared to offer, and it was not unreasonable to attempt to make this determination before going to Meldon to ask him to contribute additional monies.  Prior to conducting an investigation, it would have been unclear what the difference was between Novoa's request and the amount GEICO could pay.  Novoa's letter did not set any deadline or give any indication that GEICO was expected to reach an immediate decision; to the contrary, Novoa's letter invited GEICO to seek further information from her if necessary, and GEICO was in the process of doing so when Novoa filed suit.  By the time Novoa had determined

not to settle her claim—which occurred at the latest by February 1, *see* Overbeck Dep. 8 [ECF No. 29-1]—GEICO was still negotiating the property portion of Novoa's claim in good faith, and its offer of the full $10,000 for bodily injury remained pending with no response either positive or negative from Novoa.  Once Novoa determined not to accept a settlement offer, none of GEICO's subsequent actions or inactions vis-à-vis Meldon could have hindered settlement so as to support a bad-faith claim.  No reasonable jury could conclude that GEICO's actions prior to that time demonstrate bad faith by GEICO.[30]

Finally, Novoa contends that GEICO acted in bad faith by sending her a release that was overbroad, covering *all* of her claims despite only tendering an amount sufficient to settle her bodily injury claim.  GEICO responds that the letter, which accompanied the release, expressly indicated that the release was intended only to apply to the bodily injury portion of Novoa's claim and that the property-damage claim was being handled separately.  Clearly, Novoa was not misled by the release's all-inclusive language because she did not sign the release and subsequently communicated her claim for additional compensation for property damage, to which request GEICO responded appropriately.

_____

[30]The same is true regarding GEICO's efforts to determine the proper source of Novoa's $5,000 PIP death benefit.  Plaintiff does not dispute that from the beginning GEICO was attempting to determine whether Novoa had PIP coverage of her own, DePoy Dep. 11-12 [ECF No. 26-1], and when Novoa ultimately did demand GEICO pay the death benefit in the complaint she filed approximately two months after the accident, the parties quickly resolved the issue, and GEICO made the payment.  No evidence in the record would support a finding that GEICO acted in bad faith with respect to the PIP death benefit or that its handling of the PIP claim contributed in any way to the excess judgment against Meldon.

13

Order Granting Defendant's Motion for Summary Judgment
Novoa v. GEICO Indemnity Co.
Case No. 12-cv-80223-DTKH

## IV.   CONCLUSION

In light of the foregoing, the Court will enter summary judgment in GEICO's favor because no genuine issue of material fact exists and nothing in the record would support a finding of bad faith.

Accordingly, it is hereby **ORDERED** and **ADJUDGED** as follows:

1.      Defendant's Motion for Summary Judgment [ECF No. 14] is **GRANTED**.

2.      Pursuant to Fed. R. Civ. P. 58(a), the Court will enter final judgment in a separate document.

**DONE** and **SIGNED** in Chambers at West Palm Beach, Florida, this 16th  day of January, 2013.

Daniel T. K. Hurley
United States District Judge

*Copies provided to counsel of record*